The case number 14-2426, United States of America v. Bernard Edmond. In case number 14-2427, United States of America v. Frank Harper. In case number 14-2428, United States of America v. Philip Harper. Oral argument not to exceed 10 minutes for each defendant and 30 minutes for plaintiff. Mr. Shulman for the appellant. Good morning. May it please the Court. My name is Sanford Shulman. I represent the defendant appellant, Bernard Edmond. I'd like to reserve two minutes for rebuttal. I'd like to take the short time for oral argument to focus on primarily one of the issues, and that involves the jury instructions for the aiding and abetting charge and the great weight of the evidence on the conspiracy charge. I think the government has all but conceded that the jury instruction was erroneous when it failed to instruct the jury on the advance notice provision in the aiding and abetting. And as the trial attorney, I have to mention that had we been allowed to argue aiding and abetting, had Rosamond come out prior to our trial. Tommy, was this an objection that was preserved? Or is this something where the Supreme Court case came out later? Yes, it came out later. Okay, so we're in plain air land, right? Yes. Okay. Plain air. And I think the government even concedes that it was plain air. I guess they make an argument it was harmless. I don't think they concede that plain air applies. I don't think they're conceding it was a plain air. I'm sorry, yes. It would be a very short argument. It would be. Well, right, and Rosamond hadn't been published at that time, and the Henry case that was unanimous opinion here, which I know Justice Sutton, you had written it, hadn't come out at the time of our trial. But had it, I would have argued advance notice in my opening, throughout the trial, my closing, and I would have asked for the instructions. And I think the court certainly would have complied with that request. What would you have said in response to the Pinkerton theory? So the Pinkerton is, I would have argued that the Pinkerton issue, the jury needs to look at the totality of all the instructions. The government chose to charge with both aiding and abetting and in conspiracy. But we were entitled, as a result of that, to the instruction on advance notice. Because it wasn't given, the jury never heard that instruction. It would have been one of the instructions provided, in addition to the Pinkerton instruction. As for purposes of the appellate issue, our argument is that, as relates to Mr. Edmund, the government failed to prove that it was reasonably foreseeable. Now, you have to remember, Mr. Edmund had nothing to do with the carjackings. He wasn't present. He didn't supply any of the firearms. He had no advance notice. He did have a preference for expensive cars with keys in them. He did, and that's the government's theory. But like a pawn shop where you bring in jewelry, you say, hey, I want to sell you my jewelry, and they sell it, and all of a sudden you have a craving for expensive jewelry. It doesn't mean it's reasonably foreseeable that I would have stolen it. In fact, Mr. Edmund was acquitted of one of the 924Cs. Even the witnesses unequivocally said these were spontaneous acts of criminal activity. Certainly they could have gotten, and I think in one case, the Opus of L.A., they were planning just to punch the valet, grab the keys, the fobs, and press the buttons to find the cars. So it wouldn't have been reasonably foreseeable to anticipate that every single time or any of the times there would be carjackings. So punching takes you outside of the world of carjacking? It takes you outside of 924Cs, for sure. Oh, okay. Yeah, and that's 55 years right there. So at least I could have argued, and I think I did, and with the totality of the instructions, Mr. Edmund is facing these 924C counts because the government's arguing that, well, it's reasonably foreseeable that in every case you would have anticipated a stolen car with a fob would have been the result of a carjacking with a firearm. And we maintain that that wasn't consistent with the facts. I mean, isn't it pretty normal? I mean, I know carjacking is not normal, but it doesn't seem that exceptional to me to have carjackings with firearms. I would guess that would be 99% of them. Potentially, yes, it could. But the idea is could you obtain a car with a fob without committing a carjacking? I think that is the question. I think it's whether it's reasonably foreseeable that when you're at this end of the conspiracy, you have this role in it, and there's a huge preference for these expensive cars with keys, that that is what's going to happen. Well, the initial idea in the testimony was that we wanted to get the cars with the fobs. With the valet, all you need to do is swipe those keys and you can get those cars. So you're saying because there is a way that you could do it without using a firearm, it's not reasonably foreseeable that a firearm would be used. Yes. Not only is there a could-a-way, but the witnesses testified that that was a plan, that they were going to do that. They were going to get... In one case. In one of many. In fact, they started by not even doing carjackings. The witnesses said that they grew into this later, that they would run and jump into the cars. There was a certain term that they used. But the recipient of the cars, all they needed was the fobs. In fact, if there was a carjacking without a fob, it was, according to the government's theory, it was worthless. So it's the fob and the car together that made it a valuable commodity. And the argument is, is it reasonably foreseeable that you come into my store and you've got a jewelry or a car that I could have foreseen that you would have stolen it? I mean, it's a high-end car, high-end jewelry. You don't look like someone who might have been able to purchase that. It gets into a whole discussion about what is foreseeable. And you have to remember, these witnesses said they had little, if any, contact with Mr. Edmond. There was no indication there was plans or that there was any advice. And the instruction is that you have to have committed it or caused or aided. There was no testimony that he committed the carjackings or provided the firearms or was present or aided in it or did anything affirmative. Then you have the Pinkerton point. Correct, the Pinkerton instruction. But still the jury needs to have heard, in purpose of our defense, the government charged both the aiding and abetting and Pinkerton, I would have argued, the advanced notice in addition to the reasonably foreseeability. And I would have argued... What's your best case when you have an instruction where one possibility of liability, one possible reason for conviction has been proved wrong by a later case but the other instruction is still legit. So you have one bad instruction, one good instruction. It's plain air land, and someone says that's plain air. What's your best case for that? My case, Rosario Diaz. It's 15 years old, which makes it even more important because it even predates Rosamond. Five defendants convicted of aiding and abetting in a carjacking, resulting in the victim's death. Conspiracy to commit the carjacking. Each defendant appealed. They got two life sentences. The First Circuit out of Puerto Rico reversed the aiding and abetting because there was insufficient evidence that the two defendants possessed the requisite foreknowledge that the carjacking was to be committed. And that was a seminal case there, and it predates Rosamond. It predates Henry. And I think it's a significant type of analogy that I would ask this Court to use. I know I have just a few seconds, and I just want to touch very briefly on the other issues that were raised, the failure to appoint the handwriting expert, the sentencing issues. I think they were properly preserved. They were argued. The case involved the identification of Mr. Edmond. And finally, at sentencing, we argued that the Court should at least consider the significant sentence for the 924Cs in deciding how to sentence him for the carjackings. If there's no other questions, I will reserve two minutes for rebuttal. Thank you. May it please the Court, Daniel Bradley on behalf of the appellant Frank Harper. And like Mr. Shulman, I would like to reserve two minutes for rebuttal. We raised several issues in our brief, and I'm happy to focus on anyone that's of the most concern to the Court given our time restrictions. But if there's no preference, I'll just launch into our first issue, which was the evidentiary one. So the issue here is that the District Court allowed the government to introduce evidence of a December 31, 2010 drive-by shooting that was not a part of the charged conspiracy. The conspiracy was a conspiracy to carjack vehicles, and this incident was different. It wasn't even a car theft. It was, frankly, an act of wanton violence. So I'll begin by saying the government is correct when it says that the case law in this circuit and the doctrines of res geste, background evidence, intrinsic evidence, and inextricably intertwined evidence are probably more muddled than they could be, but that's not a problem unique to the Sixth Circuit. Indeed, several courts have observed that these doctrines and all their various convoluted formulations have expanded to the point where they've become little more than a roadmap to circumvent Rule 404B. Cases like this one, where it's clear that the government is using these exceptions to justify introducing evidence that at least in part is intended to be used for the propensity inference, have led at least the Third and Seventh Circuits to either completely abandon these doctrines or to severely scale back their application. Now, this circuit does not form... What's our standard of review of this argument? The standard of review is sort of multi-step. So there are legal questions involved here, and then ultimately when you get to the Rule 403 step, there's a discretionary component. But the threshold question, for example, of whether this drive-by shooting was an other act for Rule 404B purposes or was somehow intrinsic to the charge defense, that's a question of law that this court reviews de novo. So questions about what test should apply and how that test should apply, those are questions of law. If you ultimately get to the Rule 403 balancing, again, that has a discretionary component. But your main argument here is a legal one, that it's not intrinsic? Is that your main point? Well, there are several components to our argument. First is that it doesn't appear that the district court even sort of applied the right tests. The ruling was a short one, although it was definitive, and it jumbled together some key terms from the res gestate doctrine, the inextricably intertwined doctrine, which frankly should be kept separate, and then tossed in the words 404B without really clearly articulating a justification according to the three prongs of this circuit's test. So that right there is an error, failing to clearly apply the test. That's an easy one. We also believe, again, yes, that the evidence was not inextricable or did not fall under any of these exception doctrines. That's a legal argument. We further believe that if it came to the Rule 403 balancing, there would be an abuse of discretion here. Now to expand on that in some more detail, as I was saying, this circuit has not formally abandoned the doctrinette issue, but it has been rightly cautious about its application. Simply put, though, the test cannot function the way the government wants to use it in this case. The government's position essentially boils down to the proposition that evidence is, I believe the phrase is, part of a common scheme, I'm sorry, part of a single criminal episode or part of a continuing pattern of illegal activity. The government seems to think that means a continuing pattern of illegal activity committed by a person. So the test is defined with reference to a person or persons, such that, for example, any criminal activity committed by Stratford Newton and Frank Harper together is necessarily relevant to and inextricably intertwined with later criminal activity committed by those two individuals. But that's just propensity evidence by another name, and it's well established in every circuit that these doctrines can't be used to circumvent the goals of Rule 404B. So the connection— They're in a carjacked car, and so they've just stolen the car. They're going to use that car for another carjacking, and then the gun that's used is a gun that's used in a carjacking. One of the big issues in the case was whether the 924 charges, you should have convictions for in terms of whether it's reasonable foreseeability, whether the guns were part of the carjacking. That's right, Your Honor. It's odd to say, I don't know. I mean, it doesn't seem crazy, let's put it that way, to think that this should be admitted. That's right, Your Honor. So the issue stems partially from the fact that they're all tried together. But Stratford Newton was not on trial. Frank Harper was. And there's a little bit of nuance to the government's take on that issue, Mrs. Yes, it was a carjacked car, but Stratford Newton carjacked it. Frank didn't join the conspiracy for a month after this. No witness ever testified that he did. No witness ever testified that he had knowledge of, let alone participated in carjackings prior to the end of January. And there was no evidence, not even any testimony from Stratford, that Frank knew the car was stolen. The government may believe that he knew, but they didn't prove it. So that can't serve as a foundation for the introduction of the evidence. Likewise, again, there's no evidence that Frank knew Stratford Newton's gun was being used in carjackings at this time. So all of those arguments that tie this event to the greater conspiracy that existed at this time are sort of red herrings. Sure, it may have been acceptable proof of the existence of conspiracy some people were involved in, but it was introduced to prove the specific intent element of the charges against Frank Harper, and it was not admissible for that purpose. Now I can continue on this issue if you like, but I'd also like to say a few words about the knowing introduction of false testimony issue. And this court's familiar with the test. It's a relatively simple one. The testimony needs to be false, needs to be material, and the government needs to know that it's false. The first two components of that test, frankly, don't require a lot of overthinking in this case. The testimony was self-evidently false. And aside from the sort of direct evidence that comes from Agent Southert articulating on the stand things that are physically impossible, there's a lot of circumstantial evidence as to means, motive, and opportunity for why he would do that, to borrow a phrase that prosecutors like to use. He sat through Stratford Newton's testimony. He knew what the problems were. He knew how Stratford Newton's credibility had been riddled. And he came up there and fell on his sword. Now I think the trickier component is whether the government knew the testimony is false. And our brief shouldn't be read to attribute any sort of malice or ill will to the government, but it has to be remembered that there's a should-have-known component to that test. If the government knew or should have known that the testimony it was introducing was false, then an error has been committed. Why should they have known? Because it was physically impossible. And because the government, for the record, sat with the agent and reviewed these 302s on many, many occasions prior to subsequent witness interviews, prior to the trial, certainly prior to Agent Southert's testimony. So it's just certainly the case that they should have come up with this problem sometimes. Lay out the physically impossible point. I mean, there's a lot of issues in this case. Right. Forgive me for not having all the facts on this one lined up. No, no, no, it's all right. So we cut and pasted large portions of the transcript to the brief for if any additional reference is necessary. But the issue is that Stratford Newton was cross-examined extensively as to certain components of his trial testimony which were inconsistent with 302s provided by the government pursuant to the Jancks Act of the defense. Defense counsel came up and crossed Stratford on those inconsistencies extensively, and they weren't nothing. One of them, for example, went to whether Frank Harper was even present at one of the three carjackings he was charged to have participated in. So the agent comes out on the stand a few days later, having sat through Stratford Newton's testimony, and testifies that he has suddenly realized that there were mistakes, he called them mistakes, in the 302s, and that those mistakes needed to be corrected. So the prosecutor and the agent engaged in a colloquy where we went through the 302s, identified these mistakes, and explained that really the 302s were wrong and what Stratford Newton said was consistent with what he said all along. The problem is the way that the agent explained his sort of realization of these mistakes. He said that it wasn't sloppiness. He said that on the stand. He said that it wasn't an issue of not being careful. And I'll finish this question and sit down. My real quick question is if all of this came out at trial, how is it prejudicial? I mean, in other words, it sounds like the adversarial process worked the way it should. Well, it's an interesting point, and I think the timing component is important. So, for example, the government's sort of defense for this, or the reason why it was harmless, is they want to say that this is all on the up and up. These are corrections to the reports. It came out during trial. But think about it this way. If that's true, and if these were just legitimate corrections to the reports that, as he put it, Agent Southard came to the realization of when he was preparing for trial, then why did the government and Agent Southard sit there throughout defense counsel's extensive cross-examination of Stratford-Newton on these inconsistencies and say nothing, and sit there and functionally allow defense counsel to beclown themselves based on false discovery materials provided by the government? There's really no right answer to this. It's either a false testimony issue or it's a Brady violation. So I'm out of time, and I'm going to take a seat. But I'll speak more about it in a rebuttal if necessary. Thank you. Thank you. Good morning, Your Honor. For the record, Robin Frankel. I'm appearing here on behalf of Philip Harper. I'm going to do my best to not repeat what some of the other arguments have been raised by co-counsel, but I do want to speak briefly to the Pinkerton-Rosamond issue because, in a sense, it's a single issue, even though I understand there are two theories of liability here, of culpability here, one as a conspirator, as a co-conspirator, one as an aider and abetter. I think we all agree there was no Rosamond instruction given. Rosamond didn't come out until after the case was filed. The difficulty is when you read the jury instructions as a whole, they are entirely convoluted. Nobody says, nobody, the judge doesn't instruct the jury. You have two options for convicting these gentlemen under a 924C theory. But this argument wasn't raised below, right? It couldn't have been raised because Rosamond wasn't issued. I thought you were making a different point. The package of instructions, even given that they didn't know about Rosamond, the package of instructions was poorly put together, hard to understand. I'm just saying, if that's the point, did someone say that to the judge and try to get them approved? I believe, if my memory serves me right and I don't have the page in front of me, that Frank Harper's trial attorney did, in fact, object to the Pinkerton instruction by arguing that it was so complicated that the jury would be confused. And that really is the difficulty when you read the instructions. The judge instructs initially on conspiracy, then instructs on 924C as a co-conspirator, then jumps into the substantive offenses of carjacking, and then says, and I'm paraphrasing, and for all these crimes that I've explained to you, the defendants may also be convicted as an aider and abetter. Every time you go back and reread a brief before you come in here, you think of new arguments and things you wish you would have said. And I apologize for the bouncing. I'm following the thread here. You're saying there's not only a problem on the aiding and abetting instruction, you're saying for Frank there's also a claim that the Pinkerton instruction was wrong? All of the defendants at the time of the instructions joined in Frank Harper's objection stating that the Pinkerton instruction should not have been given because it confused the jury. It did not, it wasn't appropriate for the circumstances of this case. And the reality, stepping outside. This is not a conspiracy, is that the point? Well, of course it's a conspiracy. But the difficulty is that we have these two different theories. And the theories are inconsistent, for lack of a better term. If the criminal law is all about personal responsibility, then you're looking at an aiding and abetting charge about, you have to have advanced knowledge of the presence of a weapon. If you're talking about it in terms of a conspiracy, it needs to be reasonably foreseeable. But there is still a level of personal responsibility of the defendant. What is the difference? Why should the mens rea for aiding and abetting be so far afield from a conspiracy theory? Why is it that to be convicted as an aider and abetter, you have to know that there's a weapon? But to be convicted on a conspiracy, you don't. So are you saying the government overruled Pinkerton? I don't think it overruled it, but I think that there is an open question that hasn't been addressed on whether or not it limits Pinkerton. Now, I know in other circuits Pinkerton has been limited, and I think it was Mr. Edmonds in his brief that cited several cases outside of the circuit in which Pinkerton was limited. It was refused to be extended by the Seventh Circuit to felon and possession cases. And so perhaps that's the open question. And that is something I didn't address in my brief. It's one of those things that in the last few days when you're reading through everything, you think, this doesn't make sense. You can't have one and not the other. What was the basis of the objection to the Pinkerton instruction? I don't have it word for word, and I would have to go back and look at it. According to your brief, it was that there was a constructive amendment of the indictment. That is one of the arguments that was made. That's not the one I hear you making. No, that's not specifically what I'm trying to focus on. There was a statement or objection made by Frank Harper's trial lawyer that the Pinkerton instruction was not appropriate under the circumstances of this case. It was not fleshed out more than that, to my recollection. So that doesn't really function as an objection to the instruction. I mean, how is the judge supposed to proceed on that to correct the instruction? Well, he didn't want the Pinkerton instruction given. I mean, there was an objection to giving Pinkerton because it did not work with the circumstances of this case. It operated to confuse the jury. If you read these instructions from beginning, not beginning to end, but from the conspiracy instruction through to the end of the aiding and abetting instruction, as a lawyer, I can't figure out what I can convict these guys of and on what basis. And at one point, the judge tells me— We just need you to be more specific. I mean, you agreed already that a Pinkerton instruction in the abstract was appropriate. Correct. Okay. People make mistakes. They didn't anticipate Rosamond. That's just the way it goes. But Pinkerton was still appropriate. What exactly should it have said differently? I think that there should have been, under aiding and abetting, Rosamond didn't create something new out of whole cloth. It still is the idea of personal liability. You have to have a connection. What's wrong with the Pinkerton instruction? The Pinkerton instruction was legally the correct instruction at the time of the case. The problem is now that we have Rosamond, it becomes clear that the instructions butt heads. You're relying on the Seventh Circuit. I thought the Seventh Circuit was the circuit that said Rosamond doesn't change Pinkerton. That's what Judge Easterbrook said. I'm only relying on the Seventh Circuit for the argument that in some other circuits, courts have limited Pinkertons, have limited extending the Pinkerton liability. And in the Seventh Circuit, in another situation, they limited Pinkerton's liability. Which cases should we look at to make sure we're not creating a split or we're wrong or whatever? Well, I don't know. Other circuits. I think that the other circuits, the Seventh Circuit in Wade. I think the Seventh Circuit is the one that doesn't help you. Although it refused to extend the Pinkerton liability to felon in possession statute. And I use it only to try and state that perhaps because of Rosamond, Pinkerton liability needs to be looked at in another light. Perhaps it needs to be limited in a 924C situation. That's the point that I'm attempting not very articulately to make before your honors. My time is almost up. The only other issue that I would like to address is with respect to the sentencing argument. And I understand what Franklin says, and I'm not contesting what Franklin says. But what the judge did is he sentenced him on the basis, in part, on his assumption that the mandatory minimum sentences could be overturned later. If a judge shouldn't look at the mandatory minimum sentences in order to determine the propriety of the sentences on the guidelines case, then the judge certainly shouldn't sentence on the guidelines case with an assumption that the mandatory minimums are going to be overturned. Because then what he ends up doing, intentionally or otherwise, is increasing the sentence on the underlying issue to make up for the fact that the mandatory minimums might be gone at some later point in time. Good morning, and may it please the court. Jerome Gorgon for the United States. A brief sketch of where I'd like to go on the arguments. Your honors is first on the Rosemont issue, second to the sufficiency issue, then the intrinsic evidence issue, and then whatever time I may have on the supposed intentional perjury issue. On Rosemont, one thing I wanted to go to first was what Philip Harper's attorney was talking about at that last moment. I think what the court was getting at is the Newman case. It's a Judge Easterbrook decision from 2014. It does the exact opposite of what Philip Harper's attorney is suggesting. I know, but she's saying that there are other courts that maybe you don't think that's right. I haven't seen anything like that. The four circuits that I've seen who have looked at Pinkerton post-Rosemont in the context of 924C charges, the Second Circuit, Third Circuit, and Fifth Circuit, all the cases we cited, and then there were two Eleventh Circuit cases, both unpublished, that went the exact same way. Maybe your point is, yes, fine, aiding and abetting is different from conspiracy, so that's why Rosemont wouldn't affect the Pinkerton conspiracy charge. But Rosemont actually reflects this sentiment at the court to be careful about too lightly charging people who are at the fringes of a conspiracy, I guess you might say, but not directly involved. Maybe if you apply that here, you should be a little more skeptical of Pinkerton convictions in this kind of setting when it comes to the 924C part. That's what I kind of take her to be saying. She's probably right about the court. They do seem to be getting more and more careful about this kind of thing. I think there definitely is a trend that says you should look at aiding and abetting in 924C liability more carefully. That's true. Why shouldn't it apply to Pinkerton? Well, in Rosemont, they remanded it. Why do I think legally it shouldn't? The courts that have looked at it said that, one, it's a totally different standard of liability. The reasonable foreseeability that attaches to Pinkerton legally is different. And so if the facts in a given case support a Pinkerton theory, then I think it's a fine and appropriate charge. And if you look at the defendants that it's applied to in this specific case, there's a great deal of discretion. The government applied it to the carjackers who had the guns in their hands, to Edmond, who is a remarkably sophisticated individual. And I'll get to the sufficiency argument about Edmond. It wasn't applied to any of the drug addict paper pushers on the other end, none of the marginal players who had been involved just in, quote, push deals. There was a tremendous amount of restraint in who Pinkerton was actually applied to. And even on these defendants, Your Honors, we didn't even apply it for each of the substantive 924Cs, only the ones where someone was directly involved. So there was restraint showed by the government factually here, but legally there's no problem on any of the circuit cases that have looked at the interaction of Rosemont and Pinkerton. And one other point I want to make is we're not conceding that the actual instruction we gave here, as a suggested instruction and that the court gave, was in error. It actually requires more than what Rosemont said aiding and abetting needed. Rosemont said you needed advanced knowledge. What the government put in there was knowingly caused, which is a stronger standard. We knew Rosemont was coming down the pipe. We put this language in, we didn't know what was going to happen, but this is definitely a higher threshold. Even the one circuit who has looked at language that's similar, the Young decision, the Second Circuit case, the language they had in there was just encouraged. And they found that that didn't violate Rosemont because it required some kind of foreknowledge. So here causing is certainly a stronger standard than simply encouraging. So I believe we did satisfy it. And one case that I think is important for us is Henry. When Henry discussed the Rosemont instruction, the concern in Henry at 375 was that that instruction just said the crime. It could have meant any particular crime, but here our specific aiding and abetting instruction said knowingly caused someone to carry a firearm. So it addresses the concern in Henry. And that's why I think our instruction is not a problem under Rosemont, that there's no error with the aiding and abetting instruction as a threshold matter. And then once you get under it, our next arguments are that it's harmless. Even under Richardson and Henry, it would be harmless. The next argument is that it's definitely harmless under Pinkerton as every circuit that's looked at it would say the same thing. And then the fourth thing, which I actually want to address first, because the court brought this up and it's a good question, is what is the best case? Let's assume, worst case scenario, that our Rosemont instruction, even though it required this higher threshold, was erroneous. And we had the Pinkerton instruction, which they've conceded is not erroneous, and then we have this aiding and abetting instruction. What happens when the jury's presented with those two things? The best case that I think that addresses this is Curlman 2. In Curlman 2, what the court was saying is if you have an erroneous instruction and then you have an accurate instruction, and the government makes the erroneous instruction front and center in their closing, that's a problem. That's the exact opposite of what happened here. In our closing, the government, I mentioned conspiracy 16 different times. I referenced aiding and abetting one time, and the example that I gave of aiding and abetting in the closing was someone bringing a firearm to the carjacking. So even that one example that I gave them in closing would have easily satisfied Rosemont. Why did you do the aiding and abetting? I'm sorry? Why did you even do the aiding and abetting? I must say it frustrates me. It just seems like piling on, just keep throwing options out there to the jury. You have to admit they're pretty close, Pinkerton and aiding and abetting. I must say I don't care for that. In retrospect, I think that it may have been easier and cleaner just to do the Pinkerton theory, and I think the evidence absolutely satisfies Pinkerton. Even on the most difficult case under Pinkerton, arguably, would be Mr. Edmond's case. But I disagree with the way his counsel described the testimony. Mr. Edmond knew no later than the December 30th carjacking that they were carjacking these luxury vehicles. He actually used that foreknowledge before Stratford-Newton even said anything about the vehicle to negotiate a lower price. When you say knew that they were carjacking, you're saying in a sense knew that guns were being used to get the keys? That's according to Stratford-Newton's testimony, that he knew, quote-unquote, it had been carjacked and that he used it. Carjacking to the uninitiated could just be stealing cars. To the uninitiated, perhaps. But Mr. Edmond is an incredibly sophisticated person. The testimony was that he had hundreds of vehicles that had gone through this process. He had specifically requested high-end vehicles that have advanced key systems where you need the fob. We're going to need to get them from the person on them. And then importantly, when David Garrison testified, he said that his conversation with Mr. Edmond showed that Mr. Edmond knew it, not that he discovered it or that he found it out or that he was somehow surprised. He specifically said that Bernard Edmond knew these were the cars he was getting. He knew these carjacked vehicles were the ones he was requesting, and he even specifically ordered one of them. What about this shooting incident? I guess this relates to Frank. And counsel on the other side said that that was even before he was involved in the conspiracy, and so it does seem gratuitous. Two things on that. That's not the actual testimony. Newton testified, at least on one or more occasions, that he had been doing push steals, which were part of this conspiracy, with Frank Harper, before they had been doing these specific carjackings. So he had been involved and was charged and convicted of the conspiracy, which covered 2009 all the way through 2011. So he was absolutely involved with the conspiracy before the January 25th carjacking that he was involved in. But the other thing is that incident is important for a number of reasons. The first one is that it's part of a conspiracy, and I think under Adams this takes us into a different landscape. This isn't a freestanding FIP case. It's nothing like Gibbs, where you have a felon in possession of ammunition, and then you have this massive temporal leap a month later after the story is completed, and you're just trying to pile on with this kind of prejudicial, unrelated information. Things in this specific incident are even more connected than the facts that the court already highlighted. Not just one of the guns, Your Honor, was used. It wasn't just Stratford Newton's Glock that was used in multiple carjackings, and this is a very important fact. The gun that Frank Harper had on December 31st was the same gun that Newton called him in order to get Frank to bring for the January 25th carjacking. So it's important because this incident also showed that Newton, in need of a gun to do a carjacking, knew that he could call on Frank to get Frank's gun that Frank brought, which was loaded. And then again, that wasn't the last time we saw it. We actually saw it in Exhibit 19, multiple photos of Frank's gun, which was actually taken from his social media. So it wasn't one gun. Both guns that were used on December 31st were used in multiple carjackings. Both guns were introduced at trial. And importantly, it also explained very importantly why Newton would have even contacted Frank Harper on the 25th to let him know, we need you to bring your gun, Frank. We cannot even commit this carjacking unless we have a gun. Bring yours. It's a necessary prerequisite before we do this. The other reason is it was very important to explain why Newton had never, in the initial grand jury and in his initial proffer, named Frank Harper. At trial, he testified that it was out of fear of retaliation, and it was that, until Frank Harper was actually in custody, that Newton disclosed his name. So it was important to explain Newton's credibility, which had been attacked, to show that they were using the same common tools, not just then, but afterwards. Newton's motivation for contacting Frank on January 25th and the basis for their mutual trust. There are several cases, and I think one that's very helpful is Gibbs, because there are so many different facts between this case and Gibbs. The concerns that Gibbs had, for example, that was a one-person charge. This is a conspiracy. That was a felon in possession of ammunition case that had nothing to do with a later shooting. This is a carjacking that, as I said, used the same two guns repeatedly, used that same crime vehicle the day before, the day of, and the day after. The temporal connection in Gibbs, a month later, here it's smack in the middle of all these different carjackings. And there, in Gibbs, the court said the court should err on the side of caution when there's a big, they said it specifically, when there's a big temporal gap. That's not a concern here. This is contemporaneous. The next thing is the purpose there was to show danger. I said five different purposes that the government used this. Another important purpose is to show this kind of mutual trust between the parties, and that's a purpose that this court has repeatedly recognized, including in Adams. In Adams, the court allowed as intrinsic evidence, vote-rigging evidence from a decade and a half earlier. It was from the 1980s in a case about something that happened in the 2000s, just to explain the mutual trust between these two co-conspirators. So that concern is gone as well. Another thing, in Gibbs, not only did the prosecutor use this temporally disconnected future incident, they had all these other prejudicial things. They had photos of the scene with 30 bullet holes. We didn't show any of those things. We actually showed restraint in that way. We didn't put on the victim. We never elicited testimony that anybody was shot. There were no photos of that incident. The government definitely showed restraint. Same thing, Gibbs was concerned because there was no nexus between the defendants in that case. And again, this completes the story. I have a technical question, which there's no reason you would have looked into this, but just in case you did, I'd just be curious the government's position if you've looked at it. So on the jury pool argument, there's this criminal rule 12 question of what exactly the standard is when you should have raised something before the trial court. And the new rule says, well, if you didn't raise it before trial, you can try to raise it after trial, but then you have to show good cause. And then the question is, if you didn't raise it at all at any point in trial, is it just straight-up plain air, which is what our Soto case says? But some courts have been saying, well, no, you also have to show good cause. If you don't know anything about it, that's just as well. I don't really expect you would, but if you did, I'd be just curious because I've noticed some courts are disagreeing with us on this, and I just wondered if you had any thoughts about it. I didn't look outside the circuit, but I know... You know Soto, right. Yeah, and I know what this court has held, that you have to raise it before. And then otherwise it's plain air. Okay, thanks. You're welcome. Another issue that I want to sort of directly address is Frank's argument about the Ellen Souther testimony. A couple important things. One, the way that appellate counsel is describing and characterizing this statement in court and how it's physically impossible is inaccurate. The actual cite at page record 168, page 20, A2 to A3, the testimony is from Ellen Souther, I omit that Frank Harper was present. I didn't realize that. It's not a matter of not being careful. It's a matter I simply didn't hear him say certain things. I simply don't hear it. So he never testified. What appellate counsel is saying he testified to is, I omit that Newton said Frank Harper was present. That's not what Agent Souther testified to. Agent Souther testified that he didn't hear it. That's why it's not in the report. That's his testimony. So there is no physically impossible imagining that the witness is doing on the stand. That just didn't happen. The second thing was the government impeached Newton multiple times about his pretrial lies. We brought all that out. The defense counsel repeatedly impeached Newton about his pretrial lies and inconsistencies. All of that helped the defense. There's nothing at all prejudicial about that. And showing that the government's case agent had mistakes in his report doesn't help the government out either. The reason that I did this, and I specifically said it when I started going down this path with him, is because the very first time that Agent Souther testified at the beginning of the trial, Frank Harper's counsel got up and crossed him and went over the mistakes in his reports. Because he had a number of dates that were mixed up. They opened the door. They telegraphed where they were going to go on Souther's testimony by already showing that he made mistakes. So when I went to it, I even, as a prelude into getting to the specific mistakes said, and this is right at Record 168-20-47-48. Do you remember, Agent Souther, that Philip Harper's attorney went through these different mistakes that you made in your reports? How could that happen? How do these mistakes happen? So they had already not only opened that door, but they telegraphed where they were going to. The point of those, of bringing out those mistakes, was just to blunt the cross that was going to come. It didn't bolster Newton at all. And in none of those, the five mistakes, they were about reporting dates, who was involved at an uncharged push steal, the mix-up of Omar and Edmund's description at the first proffer. None of those things hurt Frank in any way. They helped him. The court doesn't have any other questions.  Thank you. I just wanted to take the opportunity in rebuttals just to take some of the exception to the characterization of Bernard Edmund as having reasonably foreseeable inferences or knowledge of these carjackings, because he had later heard about these. I don't think that supports the government's contention that these were knowledge that he knew beforehand. It's not what he may have heard later. And the government says that Pinkerton is not limited. But I cite in pages 39 and 40 of our brief the Ninth, Tenth, and Eleventh Circuits, which all limited Pinkerton. And, in fact, the Eleventh Circuit in Alvarez limited only those conspirators with actual knowledge of circumstances of conspiracy or who played more than a minor part in a conspiracy to avoid the very problem that we have before this court. In fact, the Seventh and Eleventh Circuits require substantial evidence to connect the defendant to the ongoing conspiracy in Derive, all cited in my brief. And in their response, there was no mention of those cases. Finally, and I'll conclude by saying this, that if advanced knowledge is required by Roseman and Henry, then at least it shows that Pinkerton is limited, and it should be limited, consistent with the Supreme Court's Roseman and this court's decision in Henry. Thank you. Thank you. The government just purported to read to this court the relevant transcripts in the false testimony issue, but left out chunks of the passage that it read. The testimony actually says, Agent Southerd, Yes, I didn't realize that I had three pages here. I actually found one more error or omission, actually. What's that? On January 31, 2011, I note that Philip Harper, Glenn Douglas, and Bowman had taken a Camaro, CTS, and Infinity truck. However, I omit that Frank Harper was present. Why would you omit that? I probably didn't hear him say Frank. If you didn't hear the witness say Frank, then you cannot possibly have personal knowledge that the omission of the word Frank from the report was an error or an omission. If you didn't hear him say Frank, then the report is correct based on your personal knowledge, and it was demonstrably false for the agent to testify that the report was an error. That has the effect on the jury of telling them that Stratford Newton's testimony is in fact consistent with what he previously said, a fact which is totally outside of Agent Souther's personal knowledge based on his own testimony that the reason for the omission is that he didn't hear it said. I want to move on from that because, frankly, the falseness of his testimony is self-evident. Let's talk about the evidentiary issue. The government came up here and pointed out, which is correct, and I believe we mentioned this in our briefs, that Stratford Newton testified Frank was previously involved in push steals before he joined the carjacking conspiracy in late January. The government didn't charge anyone in this case with a conspiracy to commit push steals because push steals are not a federal offense. This was a conspiracy to commit carjacking offenses, and evidence that Frank committed push steals is not evidence of a carjacking conspiracy. The degree of intent involved is very different. Why isn't it relevant evidence? I mean, why isn't it like a gateway crime? I agree, that is relevant evidence. When Stratford Newton testified that Frank Harper had previously committed push steals, that testimony went in, and we're not here arguing about it. But testimony of a shooting is a totally different matter, and this court said in United States v. Clay that an assault and a carjacking are too unrelated for the one to be probative of the other. That's because the mens rea required to prove each offense is categorically different. It's of a different kind. They don't just differ in degree. Now, the point is the government continues to act, and I'm sorry I'm out of time. I'll wrap up my thought. The government continues to behave as though the presence of a conspiracy to commit carjacking between Stratford Newton and his associates in December somehow means that evidence of the existence of that conspiracy is also evidence of Frank's guilt a month later, and that's simply not the case. I would refer this court to United States v. Gomez, which is the Seventh Circuit's recent en banc decision, essentially reworking the 404B test. It's a Diane Sykes opinion, and it's very persuasive. The point is you can't use evidence for the propensity inference. It doesn't matter if you can list acceptable purposes, like proving they knew each other. If buried somewhere in the chain of inferences you want the jury to draw is the forbidden inference. The government has admitted in this case they wanted the jury to draw the forbidden inference, that Frank had a propensity or a willingness to shoot people in cars. The government has admitted this evidence is inadmissible. I'll leave the court with that. Thank you. Thank you, Your Honors. Just very briefly, with respect to the idea of foreseeability and actual knowledge, I want to simply, I don't know if it's correct or qualify, one of the statements that was made by the government. This was not necessarily an escalation from push steals to carjacking. Stratford Newton testified, was record number 162, page ID 961. He never stopped push steals. If sometimes there's an auto theft without a gun, and sometimes there's an auto theft where somebody pops up with a gun, what's the foreseeability that it's going to occur every single time? Specifically with respect to the first charge with which Philip Harper was included on the carjacking, it's counts two and three at the Elysium. That's the first time that he's there, and in that particular incident nobody testifies that he has a gun, nobody testified that he knew anybody was going to bring a gun. When Stratford Newton testifies, some other guy had a gun during that incident. Under either standard, the more stringent standard of Pinkerton, I'm sorry, the more stringent standard of Rosemond, or the simpler standard under Pinkerton, there's no foreseeability if there's no indication that he knew anybody was going to have a gun. Thank you. Thank you, counsel. The case will be submitted. The court would like to thank all three of the defense counsel who we note are CJA counsel. We very much appreciate the work that you do. Without it, we'd have a lot of trouble making the whole system run. Thank you very much. The case will be submitted. The clerk may call the next case.